# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SHANE JOSIAH KIRK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-21-4-SLP** |
| | ) |
| **STEPHENS COUNTY, OKLAHOMA, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Shane Josiah Kirk, appearing *pro se*, brings this action under 42 U.S.C. §

1983, alleging various violations. (ECF Nos. 21 & 22). [1] United States District Judge Scott

L. Palk has referred this matter to the undersigned magistrate judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B)-(C). A review of the Amended Complaint has

been conducted pursuant to 28 U.S.C. § 1915A(a). Based on that review, it is

recommended that the Court: (1) dismiss, with prejudice, any claims against the Stephens

County Sheriff's Office and Stephens County Detention Center; (2) dismiss, with

prejudice, Claims One, Nine, Ten, Eleven, and Fourteen as untimely; (3) dismiss, without

prejudice, Claims Two, Three, Four, Five, Six, Seven, Eight, Sixteen and Seventeen[2] for

---

[1] Pursuant to the Court's order, Plaintiff filed an Amended Complaint on February 18, 2021. (ECF No. 21). On February 26, Mr. Kirk filed "Additional Claim: CIV-21-4-SLP," which the undersigned construed as a Supplement to the Amended Complaint. *See* ECF Nos. 22 & 25.

[2] In the Amended Complaint, Plaintiff asserts sixteen claims, which he refers to by number. *See* ECF No. 21. In ECF No. 25, the Court allowed Plaintiff to supplement the Amended Complaint with an additional claim, which the Court referred to as "Claim Seventeen."

failure to state a claim; (4) conclude that Plaintiff has stated a claim for deliberate indifference against Defendants Rohrbough and Kasey in their individual and official capacities as set forth in Claim Twelve; (5) conclude that Plaintiff has stated a claim for deliberate indifference against Defendant Martin in his individual and official capacities and against Turn-Key Health as set forth in Claim Thirteen; and (6) conclude that Plaintiff has stated a claim for deliberate indifference against Defendants Rohrbough and Martinez in their individual and official capacities as set forth in Claim Fifteen.

## I.    SCREENING REQUIREMENT

The Court must review each complaint in which a prisoner seeks redress against a governmental entity, officer, or employee and each case in which a plaintiff proceeds *in forma pauperis*. 28 U.S.C. § 1915A(a). The Court is required to dismiss the complaint or any portion of the complaint that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b); *see also Kay v. Bemis,* 500 F.3d 1214, 1217–18 (10th Cir. 2007) (indicating that court uses same analysis for complaint's sufficiency whether performed sua sponte or pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)). Additionally, the Court may dismiss, sua sponte, based on an affirmative defense such as statute of limitations, " 'when the defense is obvious from the face of the complaint and no further factual record is required to be developed.' " *Starr v. Kober*, 642 F. App'x 914, 918 (10th Cir. 2016) (*quoting Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)).

## II.   STANDARD OF REVIEW

The Court must accept Mr. Kirk's allegations as true and construe them, and any reasonable inferences to be drawn from them, in the light most favorable to Plaintiff. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). Since Mr. Kirk is proceeding *pro se*, his complaint must be construed liberally. *See id.* at 1218. The Court "review[s] the complaint for plausibility; that is, to determine whether the complaint includes enough facts to state a claim to relief that is plausible on its face." *Young v. Davis*, 554 F.3d 1254, 1256 (10th Cir. 2009) (quotations and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct," then the plaintiff has not "nudged (his) claims across the line from conceivable to plausible." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir. 2008).

A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (quotation marks and citations omitted).

Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to plausibly show that a person acting under color of state law has violated or is violating a federal right of the plaintiff. 42 U.S.C. § 1983; *Pahls v. Thomas,* 718 F.3d 1210, 1225 (10th Cir. 2013). The specific factual allegations required depend upon whether the defendant is sued in his or her official or individual capacity, as well as the type of violation alleged.

### A.   Official Capacity Claims Under 42 U.S.C. § 1983

If a defendant is sued under § 1983 in his or her official capacity, the suit is generally treated as one against the governmental entity that the defendant

represents. *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985). Here, the relevant entity is Stephens County, thereby implicating municipal liability. To establish municipal liability under § 1983, a plaintiff must first identify an official policy or custom of the municipality, whether enacted or maintained by its legislative body or an authorized decisionmaker. *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 769–70 (10th Cir. 2013). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Id.* at 770.

After identifying such an official policy or custom, the plaintiff must then establish that the policy or custom either: (1) directly violated a federal right of the plaintiff, or (2) was the "moving force" behind a county employee's violation of a federal right of the plaintiff. *Id.* Finally, a plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.* at 769, 770–71. Thus, for each claim of municipal liability, the plaintiff must establish three elements: (1) official policy or custom, (2) causation, and (3) requisite state of mind. *Id.* at 769.

## B.    Individual Capacity Claims Under 42 U.S.C. § 1983

When a defendant is sued in his or her individual capacity under § 1983, the plaintiff must establish specific elements as to each defendant. First, the plaintiff must establish the defendant's "personal involvement or participation" in the alleged violation of a federal right. *Grimsley v. MacKay,* 93 F.3d 676, 679 (10th Cir. 1996); *see*

*also Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir. 1976). Second, the plaintiff must establish a causal connection between the acts of that particular defendant and the alleged violation of a federal right. *See Iqbal,* 556 U.S. at 676; *Pahls,* 718 F.3d at 1225–28. Finally, the plaintiff must establish that the defendant acted with the state of mind required for the alleged underlying federal rights violation. *See Daniels v. Williams,* 474 U.S. 327, 330 (1986).

The above requirements also apply when a supervisor is alleged to be responsible for the misconduct of a subordinate. *See Schneider,* 717 F.3d at 767 (holding that § 1983 claim against supervisor cannot be premised on vicarious liability); *Iqbal,* 556 U.S. at 676–77; *see also Dodds v. Richardson,* 614 F.3d 1185, 1199 n. 8 (10th Cir. 2010) (noting that elements of liability may overlap). To establish the supervisor's personal involvement, a plaintiff must show that the supervisor's own individual actions violated a federal right of the plaintiff, for example through the supervisor's specific direction of a subordinate employee's action or through the supervisor's promulgation, creation, implementation, or responsibility for the continuation of a policy that resulted in the violation. *See Iqbal,* 556 U.S. at 676–77; *Schneider,* 717 F.3d at 767–68; *Pahls,* 718 F.3d at 1225, 1226 (requiring plaintiff to "identify the specific polic[y] over which [a] particular defendant[ ] possessed responsibility and that led to the alleged constitutional violation"); *Dodds,* 614 F.3d at 1194, 1199. In this regard, it is not sufficient "merely to show [the] defendant was in charge of other state actors who actually committed the violation." *Dodds,* 614 F.3d at 1195 (internal quotation marks omitted). To establish

causation—i.e., that a supervisor caused a violation of the plaintiff's federal rights—the plaintiff must establish that a subordinate of the defendant-supervisor violated the plaintiff's federal rights and that "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause" such a violation. *See Schneider,* 717 F.3d at 768 (internal quotation marks omitted); *see also Dodds,* 614 F.3d at 1195–96, 1198.

Finally, to establish state of mind, the plaintiff must show that the supervisor acted with certain requisite intent, the exact nature of which depends on the type of violation alleged but is no less than the state of mind required for the subordinate to commit the underlying violation. *See Schneider,* 717 F.3d at 769; *Daniels,* 474 U.S. at 330; *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010); *Estate of Booker v. Gomez,* 745 F.3d 405, 435 (10th Cir. 2014).

## III.   PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENT

Mr. Kirk is a pretrial detainee currently incarcerated at the Stephens County Jail. Plaintiff has filed an Amended Complaint, alleging sixteen claims against various named and unnamed Defendants. (ECF No. 21:10-21 & 22) . Specifically, Plaintiff names: (1) the Stephens County Sheriff's Department; (2) the Stephens County Detention Center (SCDC); (3) Stephens County, Oklahoma; (4) the State of Oklahoma; (5) Javier Martinez, SCDC Administrator; (6) Eva Gray, SCDC Assistant Administrator; (7) Barry Rohrbough, SCDC Officer; (8) Freddie Gowan, former SCDC Officer; (9) Ken Graham, Stephens County District Court Judge; (10) Jason Hicks, Stephens County District Attorney; (11)

Courtnie Seiss, Stephens County Assistant District Attorney; (12) Unknown Organization; (13) Unknown Named Female; (14) Unknown Named Defendants; (15) Turn-Key Health, Medical Provider for SCDC; (16) Malachi Martin, Nurse Practitioner employed by Turn-Key Health; and (17) Kasey LNU, Nurse employed by Turn-Key Health. (ECF No. 21:10-11). Plaintiff sues all Defendants in their official and individual capacities and seeks monetary and injunctive relief. (ECF No. 21:10-21).

## IV.   CLAIMS AGAINST STEPHENS COUNTY SHERRIFF'S DEPARTMENT AND STEPHENS COUNTY DETENTION CENTER

As Defendants, Plaintiff names the Stephens County Sherriff's Department and the SCDC. *See* ECF No. 21:10. Neither of these Defendants are suable entities for purposes of 42 U.S.C. § 1983.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Bruner v. Baker*, 506 F.3d 1021, 1025-1026 (10th Cir. 2007) (quotation omitted). Rule 17(b) of the Federal Rules of Civil Procedure provides that a non-corporate entity's capacity to be sued is determined by the law of the state in which the district court is located. Fed. R. Civ. P. 17(b). In Oklahoma, each organized county can sue and be sued. Okla. Stat. tit. 19, § 1. However, a detention center in Oklahoma, as a subdivision of the county in which it is located, has no separate legal identity under Oklahoma law. *See Ritchie v. Oklahoma County Detention Facility*, Case No. 15-1105-M, 2015 WL 7568470, at *1 (W.D. Okla. Oct. 22, 2015). Therefore, Defendants Stephens County Detention

Center and Stephens County Sheriff's Department cannot be sued in this Court. *See Lindsey v. Thomson,* No. 06–7114, 2007 WL 2693970 at *3 (10th Cir. 2007) (affirming dismissal of § 1983 claims against police departments and county sheriff's department, entities with no apparent legal existence); *White v. Utah,* No. 00–4109, 2001 WL 201980 at *1 (10th Cir. 2001) (affirming dismissal of county jail; although applicable state law provided that county may sue or be sued, no state law supported directing a cause of action directly against a county's subdivisions, including its jails); *Aston v. Cunningham,* No. 99–4156, 2000 WL 796086 at *4 n. 3 (10th Cir. 2000) (affirming dismissal of county jail as defendant in prisoner's § 1983 action on basis that "a detention facility is not a person or legally created entity capable of being sued"); *Reid v. Hamby,* No. 95–7142, 1997 WL 537909 at * 6 (10th Cir. 1997) (holding that "an Oklahoma 'sheriff's department' is not a proper entity for purposes of a § 1983 suit"); *Johnson v. Johnson*, Case No. 17-560-D, 2017 WL 4296405, at *2 (W.D. Okla. July 27, 2017). Thus, any claim against the Stephens County Sheriff's Department or the Stephens County Detention Center should be dismissed, with prejudice. *See Parks v. Taylor*, Case No. CIV018-968-D, 2019 WL 254669, at *2 (W.D. Okla. Jan. 17, 2019) (dismissing claims against Sherriff's Office and Detention Center with prejudice).

## V.   CLAIMS ONE, NINE, TEN, ELEVEN, AND FOURTEEN

The Court should dismiss, as time-barred, Claims One, Nine Ten, Eleven, and Fourteen.

## A.      Statute of Limitations

Because 42 U.S.C. § 1983 contains no specific statute of limitations, federal courts apply state statutes of limitation and tolling provisions in Section 1983 actions. *Wilson v. Garcia,* 471 U.S. 261, 276 (1985); *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004). For Section 1983 actions arising in Oklahoma, Oklahoma's two-year statute of limitations for personal injury suits applies. *Meade v. Grubbs,* 841 F.2d 1512, 1522 (10th Cir. 1998). A federal claim accrues when the complaining party knew or should have known of the alleged constitutional violation. *Colby v. Herrick*, 849 F.3d 1273, 1279 (10th Cir. 2017).

In addition, Oklahoma permits tolling in limited circumstances:

> The first circumstance is the existence of a legal disability, which has been applied in cases where a plaintiff's competency is impaired or where the plaintiff has not yet reached the age of majority. The second circumstance is when defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights. [Finally,] in the appropriate case, exceptional circumstances may justify tolling a statute of limitations.

*Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009) (quotations, alterations, and citations omitted). Oklahoma's exceptions to a statute of limitations "are strictly construed and are not enlarged on consideration of apparent hardship or inconvenience." *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016).

### B.      Claim One

In Claim One, Mr. Kirk alleges "Stephens County is charging me $45.00 per day for housing in Stephens County when the State of Oklahoma is already paying for it." (ECF No. 21:12). According to Plaintiff:

> Stephens County enacted Exhibit-K to pay for debts unrelated to my charges. State taxes already fund County jails. I am being double-dipped a housing fee for something my State Government is already paying for. This has damaged my financial standing at a time when I need to hire a legal defense.

(ECF No. 21:12). In ECF No. 1, Plaintiff describes "Exhibit K" thus:

> Stephens County is in financial straits. It cannot afford to fund pensions for it's [sic] Judges. A new jail meant for a D.O.C. contract that was withdrawn moved the county to enact a singularly unique fee levied on inmates for the first 90 days of detention. The original "fee" was $35.00 a day. The new "fee" is known as "Exhibit-K" at $45.00 a day for the first 90 days. Utilizing Generally-Accepted Accounting Principles (GAP) the County then leverages the ledger credit of those fees to improve the financial outlook thereby affording, among other things, pensions.

(ECF No. 1:11). Mr. Kirk does not invoke a particular constitutional right; thus the Court liberally construes Claim One to allege a violation of Due Process under the Fourteenth Amendment.

According to Mr. Kirk, he was initially booked into the SCDC on November 29, 2017. (ECF No. 21:17). Thus, the imposition of the 90-day "Exhibit K" fee would have ended 90 days later, on February 27, 2018. Plaintiff's claim alleging wrongful imposition of the housing fee in violation of Due Process would have accrued the following day, February 28, 2018, and the statute of limitations would have expired two years later. However, Plaintiff did not file the Complaint in this case until January 6, 2021.

11

Here, there is no suggestion that Plaintiff has been under a legal disability[3] or that anyone has engaged in fraud or misleading conduct. Further, the Court finds no exceptional circumstances justifying Plaintiff's delay in seeking relief in this Court. Thus, the Court should dismiss, with prejudice, Claim One as time-barred. *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (affirming dismissal with prejudice of claims barred by the applicable statute of limitations).

### C. Claim Nine

In Claim Nine, Plaintiff alleges he was wrongfully denied bail. (ECF No. 21:16).[4] According to Mr. Kirk:

> After my arrest, at a Bond Hearing, Jason Hicks requested no Bail. He stated I had connections in Colorado. That I was a flight risk. He knew I contacted Duncan PD 2 times that week. He knew I self-reported. He knew I didn't resist arrest. Judge Graham did not interogate [sic] the DA at all on his claims or the nature of my arrest or reports to Police about being poisoned. Jason Hicks hid these facts in order to ensure my confinement. Judge Graham did not ask if I had connections in Colorado or make Mr. Hicks prove these allegations. My statement in my defense for lower bail was ignored.

(ECF No. 21:16-17). Plaintiff seeks liability against the District Attorney, Defendant Hicks, and the District Judge who denied bail, Defendant Graham. (ECF No. 21:16).

---

[3] Incarceration has not been recognized as a 'legal disability' for purposes of tolling the limitations period under Oklahoma law." *Heuston v. Ballard*, 578 F. App'x 791, 793 (10th Cir. 2014).

[4] Mr. Kirk actually claims "Excessive Bail," but his subsequent statements in the Amended Complaint, along with his Initial Appearance indicate that bail was denied altogether. *See* ECF No. 21:16-17; Initial Appearance Before a Magistrate: Summary of Facts, *State of Oklahoma v. Kirk*, Case No. CF-2017-369 (Stephens Co. Dist. Ct. Dec. 1, 2017).

"[T]he right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment." *Dodds v. Richardson*, 614 F.3d 1185, 1192 10th Cir. 2010) (citation omitted). Consequently, the denial of bail must comport with the requirements of Due Process. *Id.* Even though a denial of bail may violate an individual's Due Process, the Court should conclude that Mr. Kirk's claim is untimely.

Public record in Mr. Kirk's criminal case state that bail was denied on December 1, 2017. Initial Appearance Before a Magistrate: Summary of Facts, *State of Oklahoma v. Kirk*, Case No. CF-2017-369 (Stephens Co. Dist. Ct. Dec. 1, 2017).[5] At the time bail was denied, Mr. Kirk's Due Process claim would have accrued, and as discussed, Plaintiff had two years in which to bring any related claim. *See supra*. But Mr. Kirk did not file his Complaint until January 6, 2021. (ECF No. 1). Mr. Kirk does not allege that any tolling provisions apply. *See* ECF No. 21. As a result, the Court should dismiss Claim Nine, with prejudice, as barred by the statute of limitations.

### D.    Claims Ten and Eleven

Claims Ten and Eleven allege unconstitutional conditions of confinement at the SCDC in violation of the Fourteenth Amendment. (ECF No. 21:17-18).[6] In Claim Ten,

---

[5] *See St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corporation*, 605 F.2d 1169 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[6] Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims. *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

Plaintiff alleges "Torture" at the SCDC when he was booked in on November 29, 2017. (ECF No. 21:18). According to Plaintiff, he was "stripped naked, given a female suicide dress and placed in . . . a cold cell with a toilet/sink and stone slab [and] was given no bedding or shoes." (ECF No. 21:17). In Claim Eleven, Plaintiff alleges that "for 12 out of the first 14 months" after being booked into the SDCD, he was housed in solitary confinement in "decrepit" conditions which involved no recreation time, insect invasions, cells that "leak and flood when it rains [and] freeze in winter," toilets that did not flush feces, sinks that stayed clogged, and lead pipes that made water unpotable. (ECF No. 21:18). Plaintiff also alleges that during this time he believed jail officials were poisoning his water. (ECF No. 21:18).

As stated, a two-year limitations period governs Claims Ten and Eleven. *See supra*. By Mr. Kirk's own admission, the allegations in Count Ten occurred on November 29, 2017. And utilizing that date as his self-reported "book-in" date, the "first 14 months" of his incarceration at the SCDC, as alleged in Claim Eleven, would have ended January 29, 2019, nearly two years before Plaintiff filed his Complaint on January 6, 2021. *See* ECF No. 1. Plaintiff's Amended Complaint does not allege that any of Oklahoma's tolling provisions apply. *See* ECF No. 21. Thus, the Court should dismiss, with prejudice, Claims Ten and Eleven as time-barred.

### E.    Claim Fourteen

In Claim Fourteen, Mr. Kirk alleges:

In November of 2017 I reported being poisoned by Viridian Coffee shop to Lawton/Fort Sill PD; Duncan PD; Trinidad, CO PD; Colorado Springs PD;

> Canyon County Sheriffs; Fort Carson Provost Marshall; Fort Carson Army
> Hospital; Duncan Regional Hospital. These are facts. No Duncan PD
> investigation occured [sic]. For 7 days I was left to my own fears. Jason
> Hicks and Cortnie Seiss purposefully ignored the evidence and max'd out
> the Charges, then filed a bill of particulars to seek my execution. This was
> a purposeful railroad to deflect liability from Duncan, PD to me and severely
> traumatized me.

(ECF No. 21:19-20). Plaintiff alleges he was subjected to "Unreasonably Elevated Criminal

Charges and punishment." (ECF No. 21:19).

To the extent these allegations implicate a federal constitutional right under

Section 1983, the Court should conclude that such claim is barred by the two-statute of

limitations. Mr. Kirk alleges that he reported his alleged poisoning in November 2017, and

public record shows that charges were brought against him on December 1, 2017. *See*

Amended Information, *State of Oklahoma v. Kirk*, Case No. CF-2017-369 (Dec. 1, 2017).

The two-year statute of limitations would have expired in December of 2019, but Mr.  Kirk

did not file his Complaint until January 6, 2021. *See* ECF No. 1.

To the extent these allegations implicate a state law claim, the only likely cause of

action would be a state law claim for malicious prosecution. In Oklahoma, a claim for

malicious prosecution is subject to a one-year statute of limitations. *See* Okla. Stat. tit.

12 § 95(4). Because the Complaint was not filed until January 6, 2021, any state law

claim would be untimely by over two years.

Based on the forgoing, the Court should dismiss, with prejudice, Claim Fourteen

as untimely.

## VI.   CLAIMS THREE, FIVE, AND SEVEN

Claims Three, Five, and Seven all allege a denial of court access. (ECF No. 21:13, 14, 15). The Court should conclude that none of the allegations state a claim for relief.

### A.   Constitutional Right to Court Access

State inmates have a constitutional right to " 'adequate, effective, and meaningful' access to the courts." *Petrick v. Maynard,* 11 F.3d 991, 994 (10th Cir. 1993) (quoting *Bounds v. Smith,* 430 U.S. 817, 822 (1977), *abrogated by Lewis v. Casey*, 518 U.S. 343 (1996)). States may assure this right by providing law libraries or lawyer assistance. *Id.* According to the Tenth Circuit, conduct that unduly hinders an inmate's litigation at any stage of the proceedings is actionable. *Vreeland, II, v. Schwartz*, 613 F. App'x 679, 683 (10th Cir. 2015) (*citing Cohen v. Longshore*, 621 F.3d 1311, 1317 (10th Cir. 2010)). However, an inmate claiming a denial of access to courts must show that he suffered "actual injury" as a result of the alleged deprivation. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). To state a claim of "actual injury," a plaintiff must allege that he was "frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Lewis*).

### B.   Plaintiff's Allegations Fail to State a Claim for Denial of Court Access

The Court should dismiss Claims Three, Five, and Seven, without prejudice, as they do not state a claim for relief for a denial of court access.

In Claim Three, Plaintiff alleges a "[d]enial of right of access to Lawyer." (ECF No. 21:13). According to Mr. Kirk:

> [His] lawyer Clinton Russell was turned away from visiting [him] because Judge Graham had a requirement for all Lawyers who see [Plaintiff] to file a notice of appearance. However, Clint Russell told [Plaintiff] over a recorded phone call (Prodigy Solutions) that a female turned him away because of a 'screwy jail rule' where [he] [had] less rights for civil issues. Mr. Russell never pursued the matter further.

(ECF No. 21:13). Plaintiff names an "unknown named female" employee of the SCDC as the Defendant in Claim Three. (ECF No. 21:13). The Court liberally construes these contentions to allege a denial of court access.[7]

In Claim Five, Mr. Kirk alleges a "[d]enial of right to petition for redress." (ECF No. 21:14). In support of this claim, Plaintiff alleges that Defendants Martinez and Gray violated his constitutional rights by failing to address various "requests to staff" and "grievances." (ECF No. 21:14). According to Plaintiff:

> In September/October of 2020 my grievances and Requests asserting my rights were not responded to by Javier Martinez. Eva Gray wrote in a Response to a "Request to Staff" (RTS) on 15OCT2020 that they will look into electronic grievances. My unanswered grievances . . . were never addressed.

---

[7] To the extent Plaintiff is alleging a violation of his right to counsel under the Sixth Amendment, the Court should likewise find that Mr. Kirk's allegations have failed to state a claim for relief. *See Aurelio v. Joyce*, 683 F. App'x, 734–35 (10th Cir. 2017) (general allegations that plaintiff was denied contact with attorney "without regard to the duration of the contact restriction, the nature of the legal proceedings happening at the time, or the type of harm that resulted" were insufficient to show that he had stated a claim for relief under the Sixth Amendment.).

(ECF No. 21:14). The Court liberally construes these statements to allege a denial of court access—i.e.—that Defendants Martinez' and Gray's actions prevented him from exhausting his administrative remedies as required by the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (to exhaust administrative remedies, an inmate must properly follow the steps set forth in the prison's grievance procedure).[8]

In Claim Seven, Mr. Kirk alleges a "[d]enial of Law Library" and names Stephens County Sheriff McKinney as the Defendant. (ECF No. 21:15). In support of Claim Seven, Plaintiff states:

> Stephens County Detention Center does not provide a law library because an Oklahoma law absolves then of this responsibility if they provide access to lawyers. In July of 2020 Stephens County DC denied me access to a Lawyer. Therefore they have to provide a Law Library. They have not done so.

(ECF No. 21:15).

Nowhere in Claims Three, Five, and/or Seven does Mr. Kirk allege "actual injury" as a result of the alleged deprivations. Plaintiff never alleges that the denial of his attorney visit (Claim Three), or Defendants' failure to address grievances (Claim Five), or the lack

---

[8] To the extent Plaintiff alleges a deprivation of Due Process by challenging the adequacy of the grievance procedure, such claim would also fail, as prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *See Burnett v. Allbaugh*, 715 F. App'x 848, 852 (10th Cir. 2017) ("[a] viable due process claim cannot rest on allegations of an unfair or inadequate grievance process."); *Brewer v. Gilroy*, 625 F. App'x 827, 838 (10th Cir. 2015) ("Mr. Brewer has no independent due process rights that arise out of OSP or ODOC employees' disposition of internal grievances."); *Von Hallcy v. Clements*, 519 F. App'x 521, 524 (10th Cir. 2013) (rejecting prisoner's claim that prison director violated due process by providing him with an inadequate prisoner grievance reporting system).

of a law library (Claim Seven) had somehow impeded his ability to "pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *See* ECF No. 21:13, 14, 15. Thus, the Court should dismiss, without prejudice, Plaintiff's right-of-court-access claims as set forth in Claims Three, Five, and Seven, for failure to state a claim.

## VII.   CLAIMS TWO AND SIX AND SEVENTEEN

In Claim Two, Plaintiff alleges an interference with his "access to and receipt of U.S. Mail." (ECF No. 21:12). In Claim Six, Plaintiff alleges "[d]enial of legal mail integrity/right to communicate with U.S. Court in confidentiality." (ECF No. 21:15). In claim Seventeen, Plaintiff alleges "Interference with U.S. Mail." (ECF No. 22:1). Based on these allegations, the Court liberally construes Claims Two, Six and Seventeen to implicate Mr. Kirk's First and Fourteenth Amendments, including his right to court access. *See Procunier v. Martinez*, 416 U.S. 396, 408 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989) (A refusal to process any mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights); *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (recognizing claim involving intentional interference with legal mail as a denial of court access claim).

In Claim Two, Plaintiff alleges that letters he had mailed, but were returned to the SCDC as "Return to Sender," were placed in his "property" rather than given directly to him. (ECF No. 21:12). Mr. Kirk suggests that the placement of the letters constituted intentional "blocking" which caused him to write letters to certain individuals that "will be

used against [him] at trial" because he "was under the impression [certain individuals] were ignoring [him] rather than a wrong address." (ECF No. 21:12).

Plaintiff names Mr. Martinez as the Defendant to this claim and sues Defendant Martinez in both an official and individual capacity. *See* ECF No. 21:10, 12.[9] But the Court should dismiss any official capacity claim against Defendant Martinez because Plaintiff does not identify an official policy or custom of the municipality as the moving force behind the alleged constitutional deprivation. *See supra*, *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760 (10th Cir. 2013). Likewise, the Court should dismiss any individual capacity claim against Defendant Martinez, because Mr. Kirk failed to allege that Defendant Martinez had personally participated in the alleged wrongdoing.

In the "Supporting Facts" section of Claim Two, Plaintiff states that "someone" had placed the letters in his property, and it was Defendant Martinez who informed Plaintiff where the letters were. Plaintiff does not, however, state that Defendant Martinez was personally involved as being the individual responsible for the "blocking," or otherwise directly tie Defendant Martinez to the alleged wrongdoing. As a result, the Court should dismiss any individual capacity claim against Defendant Martinez in Claim Two, without prejudice. *See supra*, *Grimsley v. MacKay,* 93 F.3d 676 (10th Cir. 1996) (requiring allegations defendant's "personal involvement or participation" in the alleged violation).

---

[9] Plaintiff also dues the SCDC, but as discussed, the SCDC is not capable of being sued. *See supra*.

In Claim Six, Plaintiff alleges: (1) a single instance of his legal mail being "pre-opened" prior to Mr. Kirk's receipt of the same and (2) that he never received Document 22 in his other pending case, CIV-20-1242. (ECF No. 21:15). In Claim Seventeen, Plaintiff alleges the jail is "blocking" mail. (ECF No. 22:1).

### A.     Pre-Opened Mail

As stated, Plaintiff alleges that "a legal envelope from U.S. Court" was pre-opened "to look for staples." (ECF No. 21:15). Mr. Kirk does not, however, allege any improper motive or resulting evidence of interference with his right to access the court. Instead, he simply states that the one envelope was not opened in front of him, an allegation which he states can be proven through video footage. (ECF No. 21:15). For two reasons, the Court should dismiss this portion of Claim Six.

First, the Tenth Circuit Court of Appeals has held that allegations of an isolated incident of opening prisoner mail fail to state a claim for relief. *See Smith v. Maschner,* 899 F.2d 940, 944 (10th Cir. 1990) (holding that a single instance of opening prisoner mail, "without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access [ ] the courts, does not give rise to a constitutional violation."); *Burnett v. Kansas*, 485 F. App'x 288, 289, 2012 WL 1825184, at *1 (10th Cir. 2012) (affirming district court's dismissal of claim alleging isolated instance of opening prisoner's mail); *Chambers v. Badsky*, 2014 WL 4261345, at *6 (D. Kan. Aug. 28, 2014) ("while the opening and reading of an inmate's legal mail without cause by a County Sheriff or any jail official cannot be condoned, this court must conclude that the single

incident described in this case does not state a federal constitutional violation so as to give rise to a claim under 42 U.S.C. § 1983.").

Second, to the extent that the allegations implicate Mr. Kirk's right of court access, Plaintiff has failed to allege an "actual injury" resulted from the opening of the single envelope. *See supra*, *Lewis* (noting that "actual injury" in a denial of court access claim requires inmate to allege that the alleged wrongdoing had impeded his ability to "pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement."). Accordingly, the Court should dismiss this portion of Claim Six, without prejudice, for failure to state a claim.

### B. Plaintiff's Failure to Receive Mail

In Claim Six, Mr. Kirk also alleges that "Other legal mail from U.S. Court has disappeared and [he] never received . . . (Doc. 22 in CIV-20-1242)." (ECF No. 21:15). In this Claim, Plaintiff has not directly alleged that any named Defendant intentionally withheld his legal mail, but instead, he states only that a certain document never arrived. The Court should dismiss this portion of Claim Six for failure to state a claim. *See Simkins*, 406 F.3d at 1242 (stating that "when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs.").

### C. Mail "Blocking"

In Claim Seventeen, Plaintiff alleges that the jail is "blocking . . . timely receipt of U.S. Mail . . . [and] U.S. Court Mail." (ECF No. 22). According to Mr. Kirk, the jail where he resides and the Stephens County Courthouse "share a postal delivery location" and

jail mail is processed through the courthouse. (ECF No. 22:1). During the recent snowstorm, when the county courthouse was closed, Plaintiff claims his receipt of "U.S. Mail" and "U.S. Court Mail" was "blocked" because the post office was still delivering mail, but it was not being processed to the jail residents due to the courthouse being closed. (ECF No. 22:1). However, Plaintiff has not alleged that the non-delivery of any documents in this case or that any specific documents have been tampered with or interfered with to the extent that a constitutional violation has occurred. In fact, in a letter postmarked the day after his complaint about "mail blocking," Mr. Kirk unequivocally states he is missing no documents in this Case. *See* ECF No. 23:1. To the extent Plaintiff seeks redress on behalf of other SCDC inmates, he lacks standing to assert such claims. *See Swoboda v. Dubach,* 992 F.2d 286, 290 (10th Cir. 1993) (holding that a pretrial detainee "lacks standing to bring claims on behalf of others" in a Section 1983 action).

## VIII.  CLAIMS FOUR AND EIGHT

In Claims Four and Eight, Plaintiff alleges a denial of Due Process in connection with two disciplinary convictions. (ECF No. 21:13-14, 16). Plaintiff seeks liability against Defendants Rohrbough and Gray and requests monetary damages. (ECF No. 21:13-13, 16). The Court should dismiss these claims based on Plaintiff's failure to allege facts implicating a protected liberty interest.

### A.    Plaintiff's Allegations

In Claim Four, Mr. Kirk alleges that he was denied due process in connection with a disciplinary conviction "for 6 bottles of hooch found in 3 cells." (ECF No. 21:13).

According to Plaintiff, he "wasn't given written notice nor given the opportunity to appeal in any official hearing or to escalate [his] appeal to [a] higher authority" and as a result of the conviction, he lost commissary privileges for 30 days. (ECF No. 21:14). In Claim Eight, Plaintiff alleges that he lost phone privileges for 14 days after he allowed another inmate to "use his phone" and he "received no written notification nor administrative due process" prior to the punishment being imposed. (ECF No. 21:16).

### B.    Due Process and Lack of a Protected Liberty Interest

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones,* 430 F.3d 1113, 1117 (10th Cir. 2005). Although this guarantee applies to prison inmates, "prisoners' due process rights are defined more narrowly." *Id.* In the prison context, the Supreme Court has established that protected liberty interests are at issue when the prison inmate is subjected to: (1) conditions that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Sandin v. Conner,* 515 U.S. 472, 484, 487, (1995); *see also Wilson,* 430 F.3d at 1117. When a protected liberty interest is implicated, procedural due process requires that a prison inmate facing a disciplinary hearing be provided:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill,* 472 U.S. 445 454 (1985); *see also Mitchell v. Maynard,* 80 F.3d 1433, 1445 (10th Cir. 1996). In addition, the results from the prison disciplinary hearing must be supported by "some evidence in the record." *Hill,* 472 U.S. at 455–56.

The Tenth Circuit has held that a prisoner does not have a protected liberty interest in a denial of commissary or telephone privileges. *See, e.g.,* Rodriguez v. General Counsel for Federal Bureau of Prisons, 315 F. App'x 79, 80, 2009 WL 485032, at *1 (10th Cir. 2009) (loss of commissary and telephone privileges for 60 days did not implicate a protected liberty interest);*Blum v. Fed. Bureau of Prisons,* No. 98–1055, 1999 WL 638232, at *3 (10th Cir. 1999) (holding that ninety-day confinement without store privileges, radio, and phone calls did not differ in significant degree and duration from ordinary incidents of prison life to create a protected liberty interest). Due to the absence of a protected liberty interest in the instant case, the Court should dismiss claims Four and Eight for failure to state a claim.[10]

## IX.   CLAIMS TWELVE, THIRTEEN AND FIFTEEN

Claims Twelve, Thirteen, and Fifteen allege deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment. (ECF No. 21:18-20). The Court should conclude that Plaintiff's allegations state a claim for relief.

---

[10]  Based on the lack of a protected liberty interest, the Court need not address the procedural deficiencies Mr. Kirk asserts or evaluate whether he received adequate procedural due process. *See Marshall v. Morton*, 421 F. App'x 832, 837, 2011 WL 1549516, at *5 (10th Cir. 2011).

### A.      Plaintiff's Constitutional Right to Medical Care

The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates. *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021). This standard prohibits deliberate indifference to a pretrial detainee's serious medical needs. *Id.* To establish a violation of this right, a pretrial detainee must satisfy objective and subjective prongs of the test. *Id.*

The objective prong is satisfied if the medical need is sufficiently serious. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). A medical need is sufficiently serious if:

> • a physician directed further treatment after diagnosing the condition or

> • the need for a doctor's attention would be obvious to a lay person.

*Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). Medical delays can be sufficiently serious if they cause substantial harm, such as "permanent loss[ ] or considerable pain." *Requena v. Roberts*, 893 F.3d 1195, 1216 (10th Cir. 2018) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong turns on the defendant's state of mind. *Lance*, 985 F.3d at 794. To satisfy this prong, the plaintiff must show that the defendant:

> • was aware of a substantial risk of serious harm and

> • chose to disregard that risk.

*See Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (aware of a "substantial risk of serious harm" (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir.

1996))); *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (disregards the risk). A plaintiff may prove awareness of a substantial risk through circumstantial evidence that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842–43 (1994).

### B.    Claims Twelve and Thirteen

In Claim Twelve, Mr. Kirk alleges that Defendant Rohrbough "seized [Plaintiff's] prescription additional mat . . . [and] then attained verbal support from Turn-Key Nurse to Justify it." (ECF No. 21:18-19). For Claim Twelve, Plaintiff seeks liability against Defendants Rohrbough and Kasey, in their official and individual capacities. (ECF No. 21:10, 11, 18).[11] In Claim Thirteen, Plaintiff states that after the mattress was removed, Defendant Martin "decided [the mattress] wasn't medically necessary. He reached this conclusion without interviewing me, physically examining me or reviewing my Army/VA records. I have a bulging disc L4/L5 from a combat related injury." (ECF No. 21:19). For Claim Thirteen, Plaintiff seeks liability against Defendant Martin in his official and individual capacities and against Turn Key Health. (ECF No. 21:10, 11, 19).

Plaintiff's allegations of a bulging disc and medical prescription for the mattress are sufficient to satisfy the objective prong of the deliberate indifference standard. Furthermore, Plaintiff's allegations that his mattress was removed without cause and subsequently, an arbitrary decision was made that the mattress was not medically necessary, even with the knowledge of Plaintiff's medical need for the same, is sufficient,

---

[11]  Plaintiff also dues the SCDC, but as discussed, the SCDC is not capable of being sued. *See supra*.

at this stage to satisfy the subjective component of the deliberate indifference test. *See Christensen v. Big Horn County Bd. of County Com'rs*, 374 F. App'x 821, 828, 2010 WL 1627833, at *5 (10th Cir. 2010) ("Staff interference with access to treatment recommended by medical personnel can, of course, support a claim of deliberate indifference[.]").

For Claim Twelve, the Court should conclude that Plaintiff has stated a claim for deliberate indifference against Defendants Rohrbough and Kasey in their individual and official capacities. For Claim Thirteen, the Court should conclude that Plaintiff has stated a claim for deliberate indifference against Defendant Martin in his individual and official capacities and against Turn-Key Health.

### C.     Claim Fifteen

In Claim Fifteen, Plaintiff alleges deliberate indifference to his serious medical needs because Defendant Rohrbough "skipp[ed] the quarantine process" upon returning an inmate to the SCDC from an outside facility, and placed the inmate in Plaintiff's cell, thereby exposing him to COVID-19. (ECF No. 21:20). In the Amended Complaint, Mr. Kirk states that "[w]ithin 7 days [of the inmate's return] 90% of [his] pod had tested positive for and were ill with COVID-19 [and] [Plaintiff] was bedridden for 14 days and had a recurrence/flair up in January 2021." (ECF No. 21:20). According to Mr. Kirk, he suffered from an intense fever for three days and was given no medication. (ECF No. 20:21).

At this stage, the Court should conclude that Plaintiff's allegations of being exposed to, and then contracting COVID-19 and not being treated for a fever are sufficient to

satisfy the objective component of the deliberate indifference test. And Plaintiff's allegations that Defendant Rohrbough "skipp[ed] the quarantine process" for the outside inmate, thereby causing Plaintiff to contract COVID-19, are sufficient to allege that Defendant Rohrbough had subjectively acted with deliberate indifference. In addition to Defendant Rohrbough, Plaintiff also names Defendant Martinez in Claim Fifteen. (ECF No. 21:20).[12] Presumably, Plaintiff seeks supervisory liability against Defendant Martinez, as Administrator of the SCDC. *See* ECF No. 21:10. Because Plaintiff has alleged a violation of SCDC policy ("the quarantine process") was the moving force behind the alleged constitutional violation, the Court should conclude that Plaintiff has also stated claim for supervisory liability against Defendant Martinez in his official and individual capacities.

## X.   CLAIM SIXTEEN

In Claim Sixteen, Plaintiff alleges a "siezure [sic] of DNA without warrant or persuit [sic] of criminal charges." (ECF No. 21:21). According to Mr. Kirk, in mid-2020, two detention officers removed Plaintiff from the pod and told him that "Oklahoma has a law compelling pre-trial detainees to submit to DNA swabs simply because they have been charged with a felony crime." (ECF No. 21:21). Mr. Kirk's DNA was taken, and he contends that the swab constituted an unreasonable seizure in violation of the Fourth Amendment. (ECF No. 21:21).

---

[12] Plaintiff also dues the SCDC, but as discussed, the SCDC is not capable of being sued. *See supra*.

The Fourth Amendment, binding on the States by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768 (1966). "As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.' " *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 652 (1995). In some circumstances, such as "[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Illinois v. McArthur,* 531 U.S. 326, 330 (2001). The need for a warrant is diminished in circumstances where:

- the public interest is such that neither a warrant nor probable cause is required;

- an individual is already on notice, for instance because of his employment; or

- the conditions of his release from government custody.

*Maryland v. King*, 569 U.S. 435, 447 (2013).

In *King*, the United States Supreme Court addressed the constitutionality of The Maryland DNA Collection Act which required that all arrestees charged with serious crimes furnish a DNA sample on a buccal swab applied to the inside of the cheeks. *King*, 569

U.S. at 447-448. The Supreme Court began its analysis by finding that a buccal swab on the inside of a person's cheek to obtain a DNA sample constitutes a "search" as that term is defined under the Fourth Amendment. *Id.* at 446.

Having determined that a buccal swab is a search, it turned to whether routinely collecting buccal swabs from arrestees as part of Maryland's intake procedure for serious offenses is reasonable under the Fourth Amendment. *See id.* at 447 ("As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is reasonableness.") (citations omitted). While the Supreme Court generally "prefer[s] some quantum of individualized suspicion" when analyzing whether an intrusion is reasonable, the Supreme Court noted that "the Fourth Amendment imposes no irreducible requirement of such suspicion" and concluded that, in the buccal swab context, no such individualized suspicion is required. *Id.* at 447. It further concluded that whether a routine buccal swab of an arrestee is reasonable under the Fourth Amendment "requires a court to weigh 'the promotion of legitimate governmental interests' against 'the degree to which [the search] intrudes upon an individual's privacy.' " *Id.* at 448 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Turning to that balancing test, the Court determined that routine buccal swabs of arrestees serves a well-established legitimate governmental interest of "identify[ing] the persons and possessions they must take into custody" upon arrest. *Id.* at 449. The Supreme Court then explained the importance of ascertaining an arrestee's identity:

> An individual's identity is more than just his name or Social Security number, and the government's interest in identification goes beyond ensuring that

the proper name is typed on the indictment. Identity has never been considered limited to the name on the arrestee's birth certificate. In fact, a name is of little value compared to the real interest in identification at stake when an individual is brought into custody. It is a well recognized aspect of criminal conduct that the perpetrator will take unusual steps to conceal not only his conduct, but also his identity. Disguises used while committing a crime may be supplemented or replaced by changed names, and even changed physical features.

. . . .

A suspect's criminal history is a critical part of his identity that officers should know when processing him for detention. It is a common occurrence that [p]eople detained for minor offenses can turn out to be the most devious and dangerous criminals. Hours after the Oklahoma City bombing, Timothy McVeigh was stopped by a state trooper who noticed he was driving without a license plate. Police stopped serial killer Joel Rifkin for the same reason.

*Id.* at 450-451 (quotations omitted, alterations in original). The Supreme Court acknowledged that DNA is not itself "evidence of any particular crime," but it is nonetheless "useful to the police because it gives them a form of identification to search the records already in their valid possession." *Id.* at 451. After examining other legitimate interests the state had in the arrestee's DNA, the Supreme Court weighed the arrestee's privacy interest and concluded that an arrestee's expectations of privacy, after taken into police custody, were diminished in scope, and that "the intrusion of a cheek swab to obtain a DNA sample is a minimal one." *Id.* at 461. The Supreme Court, thus, concluded that "DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure." *Id.* at 465.

Public record shows an Amended Information filed against Mr. Kirk on December 1, 2017, for two counts of Murder in the First Degree, in violation of Okla. Stat. tit. 21 §

701.7(A) which was supported by an Affidavit and Finding of Probable Cause dated November 30, 2017. *See* Amended Information, *State of Oklahoma v. Kirk*, Case No. CF-2017-369 (Stephens Co. Dist. Ct. Dec. 1, 2017); Affidavit, *State of Oklahoma v. Kirk*, Case No. CF-2017-369 (Stephens Co. Dist. Ct. Nov. 30, 2017). Under *Maryland v. King*, the DNA swab was reasonable and did not violate Plaintiff's Fourth Amendment rights. Thus, the Court should dismiss Claim Sixteen for failure to state a claim.

## XI.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should: (1) dismiss, with prejudice, any claims against the Stephens County Sheriff's Office and Stephens County Detention Center; (2) dismiss, with prejudice, Claims One, Nine, Ten, Eleven, and Fourteen as untimely; (3) dismiss, without prejudice, Claims Two, Three, Four, Five, Six, Seven, Eight, Sixteen and Seventeen; (4) conclude that Plaintiff has stated a claim for deliberate indifference against Defendants Rohrbough and Kasey in their individual and official capacities as set forth in Claim Twelve; (5) conclude that Plaintiff has stated a claim for deliberate indifference against Defendant Martin in his individual and official capacities and against Turn-Key Health as set forth in Claim Thirteen; and (6) conclude that Plaintiff has stated a claim for deliberate indifference against Defendants Rohrbough and Martinez in their individual and official capacities as set forth in Claim Fifteen.

If the forgoing recommendation is adopted, the only remaining Defendants would be: Defendants Martinez, Rohrbough, Kasey, Martin, Turn-Key Health, and Stephens

County (under a theory of municipal liability on the official capacity claims against Defendants Martinez and Rohrbough). All other Defendants should be terminated.

Plaintiff is hereby advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **March 22, 2021.** *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## XII.   STATUS OF THE REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned magistrate judge in the captioned matter.

ENTERED on March 5 , 2021.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE